**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

STEPHANIE DEL CARMEN PEREIRA GIANNAREAS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VITALITY EXTRACTS, LLC,

Defendant.
_______________________________________/

Case No. ________________

**CLASS ACTION**

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Stephanie Del Carmen Pereira Giannareas ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant Vitality Extracts, LLC ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of counsel, as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1. Vitality Extracts, LLC bombarded Plaintiff and thousands of others with unsolicited telephone calls (the "telephone communications") promoting its consumer products, including essential-oil and aromatherapy products, sold through its website, www.vitalityextracts.com. Plaintiff never asked to be contacted. Plaintiff never consented. Defendant contacted Plaintiff anyway.

2. Defendant's conduct violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, as well as the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

3. Defendant's unlawful telemarketing campaign invaded Plaintiff's privacy, disrupted Plaintiff's daily life, and forced Plaintiff to investigate the source of the telephone communications and retain counsel to stop them.

4. Through this class action, Plaintiff seeks statutory damages, liquidated damages, and injunctive relief to compensate for Defendant's misconduct and to stop it from continuing.

## JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction.** This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because (1) the proposed Classes contain more than 100 members in the aggregate; (2) upon information and belief, the matter in controversy, aggregating the claims of the individual Class members, exceeds $5,000,000, exclusive of interest and costs; and (3) at least one member of the Class is a citizen of a State different from Defendant. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6). Members of the FTSA Classes, all of whom received Defendant's telephone communications in Florida, include citizens of Florida. Defendant, an unincorporated association, is a citizen of Utah, the State under whose laws it is organized and where

it has its principal place of business. *See id.* § 1332(d)(10). This Court has supplemental subject matter jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the TCPA claims and are so related that they form part of the same case or controversy.

6. **Article III Standing.** Plaintiff has standing under Article III. In this Circuit, "calls placed in violation of the Telephone Consumer Protection Act are injuries in fact." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019). A telephone call "intrudes upon the seclusion of the home, fully occupies the recipient's device for a period of time, and demands the recipient's immediate attention," and those injuries "are sufficiently concrete and particularized for Article III standing." *Id.* at 1270.

7. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant. Defendant is subject to specific personal jurisdiction in this District because it purposefully directed the unlawful telephone communications at Plaintiff, who resided in this District, and Plaintiff's claims arise directly from that conduct. Defendant initiated or caused to be initiated the telephone communications to Plaintiff's cellular telephone while Plaintiff was located in this District. By directing unsolicited telephone communications into this forum, Defendant purposefully availed itself of the privilege of conducting activities in this District such that it should reasonably anticipate being haled into court here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985).

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, where Plaintiff received Defendant's unlawful telephone communications.

## PARTIES

9. Plaintiff Stephanie Del Carmen Pereira Giannareas is a natural person and, at all relevant times, was a resident of Orange County, Florida. At all relevant times, Plaintiff was the subscriber, owner, and sole customary user of the cellular telephone number ending in 7127 (the "Number") and was financially responsible for the Number. Plaintiff uses the Number as a personal, residential telephone line. The Number is assigned to a cellular telephone exchange service, is not used for any business purpose, and is used by Plaintiff for personal, family, and household purposes, including in and around Plaintiff's home and as the primary means for friends and family to reach Plaintiff. Plaintiff is therefore a "residential telephone subscriber" within the meaning of the TCPA and its implementing regulations. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant Vitality Extracts, LLC is a limited liability company organized under the laws of Utah with its principal place of business in South Jordan, Utah. Defendant is in the business of marketing and selling consumer products, including essential-oil and aromatherapy products, through its website, www.vitalityextracts.com. Defendant directed the telephone communications into the State of Florida, where Plaintiff resides. Defendant's registered agent is VCORP

Services, LLC, located at 1108 E. South Union Ave., Suite 3071, Midvale, Utah 84047.

## TCPA BACKGROUND

11. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, to curb abusive telemarketing practices that invade consumer privacy. Congress recognized that "[u]nrestricted telemarketing... can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5) (1991). *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (noting TCPA's response to "voluminous consumer complaints about abuses of telephone technology").

12. The TCPA prohibits initiating any call—other than for emergency purposes or with prior express consent—using an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Where the call includes or introduces an advertisement or constitutes telemarketing, the caller must obtain prior express *written* consent. 47 C.F.R. § 64.1200(a)(2).

13. Telemarketing calls require prior express written consent, defined as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(9). The written agreement must also include a clear and conspicuous disclosure that the

signatory is "not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." *Id.* § 64.1200(f)(9)(i)(B).

14. A called party may revoke prior express consent, including prior express written consent, "by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10). A reply of "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" to an incoming text message is a reasonable means per se to revoke consent, and once consent is revoked, "the caller may not send additional robocalls and robotexts." *Id.* Callers "may not designate an exclusive means to request revocation of consent." *Id.* All revocation requests "must be honored within a reasonable time not to exceed ten business days from receipt of such request." *Id.*

15. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3), (c)(5).

**FTSA BACKGROUND**

16. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, protects Florida residents from intrusive telemarketing calls and text messages. The FTSA safeguards privacy and prevents harassment through unsolicited "telephonic sales calls"—defined as calls, texts, or voicemails for the purpose of selling, extending credit, or gathering information for such purposes. Fla. Stat. § 501.059(1)(j). The

FTSA applies to telemarketers that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

17. The FTSA prohibits unsolicited telephonic sales calls and texts using an automated system for number selection or dialing, or a recorded message, without prior express written consent. Fla. Stat. § 501.059(8)(a). The FTSA defines "prior express written consent" as a written agreement that: (1) bears the signature of the called party; (2) clearly authorizes the placement of telephonic sales calls using an automated system for dialing or a recorded message; (3) includes the telephone number to which such calls are authorized; and (4) includes a clear and conspicuous disclosure that the called party is not required to sign the agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

18. The FTSA provides liquidated damages of $500 per violation, trebled to $1,500 for willful or knowing violations, injunctive relief, and reasonable attorney's fees. Fla. Stat. § 501.059(10), (11)(a).

## FACTUAL ALLEGATIONS

19. Plaintiff never gave prior express written consent, or prior express permission or invitation, to receive the telephone communications from Defendant.

20. Defendant initiated or caused to be initiated unlawful telephone communications to Plaintiff's telephone number in violation of the TCPA and Florida law.

21. The following are examples of the unlawful telephone communications Defendant initiated to Plaintiff's telephone number. These examples are not

exhaustive. Upon information and belief, discovery will reveal additional unlawful telephone communications initiated by Defendant or on its behalf to Plaintiff and the putative class within the applicable limitations period.




22. The telephone communications identified Defendant as the responsible party.

23. The URL address in Defendant's telephone communications leads to a website owned and/or controlled by Defendant.

24. Based on the investigation of Plaintiff's counsel, the telephone communications identified above were initiated by Defendant or on its behalf.

25. Each of the telephone communications was initiated for the purpose of encouraging the purchase of Defendant's goods or services. Each was also a "telephonic sales call" within the meaning of Fla. Stat. § 501.059(1)(j).

26. On November 2, 2022, at 5:44 p.m., Defendant called Plaintiff's cellular telephone number from a number that displayed as "unknown" and left a prerecorded voicemail lasting approximately one minute and two seconds. The voicemail stated that it was "calling from vitality extracts," told Plaintiff that she had "a $30 discount code on file" that she should use "before it expires," promoted "free store credit" that could "be used on anything you want" at "www.vitalityextracts.com," and urged the listener to buy products for "yourself" or "give the gift of vitality to your friends and loved ones." The voicemail directed the listener to call Defendant back at 1-844-429-6580, a telephone number that, upon information and belief, Defendant uses for its business. The voicemail thus promoted the purchase of Defendant's products.

27. The following facts strongly suggest that Defendant used an automated system for the selection or dialing of telephone numbers to initiate the telephone communications to Plaintiff: (1) Plaintiff never transacted business with Defendant; (2) Plaintiff never provided Plaintiff's telephone number to Defendant; and (3) the telephone communications used the same or similar generic and impersonal content designed for en masse transmission. Upon information and belief, Defendant used the same equipment or type of equipment to contact Plaintiff and the Class.

28. Defendant's calls to Plaintiff contained an artificial or prerecorded voice. The voicemail was plainly prerecorded: (1) it was a scripted, one-way message lasting

more than a minute that read a generic promotion designed for *en masse* transmission; (2) it was impersonal, opening with "Hi there" and never identifying Plaintiff by name or any detail specific to Plaintiff; (3) it announced a generic promotional code, "30OFF," that is not unique to Plaintiff and that the message repeated for the listener to "write... down"; and (4) it closed by directing the listener to call back at a toll-free number rather than engaging with the person called. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10–11 (N.D. Ga. June 23, 2016) (recognizing that whether a message is prerecorded is "a clear-cut fact easily discernible to any lay person").

29. Defendant's unlawful telephone communications caused Plaintiff and the Class concrete injury and actual damages, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, consumption of cellular phone battery and data, violation of statutory privacy rights, and disruption to daily life. Plaintiff received the telephone communications at inconvenient times, was forced to stop and check Plaintiff's phone to confirm they were not emergencies, and was compelled to investigate the source of the telephone communications and seek legal counsel to stop Defendant's conduct.

30. Upon information and belief, Defendant maintains and/or has access to outbound and inbound transmission reports for all telephone communications initiated for the purpose of promoting the sale of its goods and services, which show the dates, times, target telephone numbers, and content of each telephone communication made to Plaintiff and the Class members.

## CLASS ALLEGATIONS

31. Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed Classes:

> **TCPA Prerecorded Voice Class:** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) received one or more telephone calls on their cellular telephone number, (2) made by or on behalf of Defendant, (3) using an artificial or prerecorded voice, including prerecorded voicemail messages.
>
> **FTSA Autodialer Class:** All persons in the State of Florida who, from July 1, 2021, through the date of class certification, (1) received one or more telephonic sales calls, (2) made by or on behalf of Defendant, (3) using the same equipment or type of equipment used to contact Plaintiff.
>
> **FTSA Recorded Message Class:** All persons in the State of Florida who, from July 1, 2021, through the date of class certification, (1) received one or more telephonic sales calls, (2) made by or on behalf of Defendant, (3) that involved the playing of a recorded message.

32. The Classes defined above are referred to herein individually or collectively as the "Class."

33. Plaintiff reserves the right to expand or narrow the Class definitions following discovery.

34. Excluded from the Class are: (1) Defendant and its officers, directors, agents, and employees; (2) members of their immediate families and their legal representatives, heirs, successors, or assigns; (3) any entity in which Defendant has or had a controlling interest; (4) any judicial officer presiding over this action and the members of his or her immediate family and judicial staff; and (5) all persons who properly request exclusion from the Class.

35. **Ascertainability.** The Class is defined by objective criteria, and its members can be identified from Defendant's and its vendors' call and text-message transmission records, lead files, dialing-platform records, customer-relationship-management data, and carrier records.

36. **Numerosity.** The exact number of Class members is unknown to Plaintiff at this time but is ascertainable through Defendant's business records. Upon information and belief, each Class contains more than 100 members. Telemarketing campaigns are designed to reach large volumes of consumers—the industry refers to these recipients as "leads"—to convert a small percentage into paying customers. Joinder of all Class members is impracticable.

37. **Commonality and Predominance.** This case is driven by Defendant's uniform conduct—the same telemarketing campaign, the same equipment, and the same disregard for the law—applied to every Class member. Common questions of law and fact predominate, including:

a. Whether Defendant used an automated system for the selection or dialing of telephone numbers within the meaning of the FTSA;

b. Whether Defendant used an artificial or prerecorded voice to make the telephone communications at issue;

c. Whether Defendant's telephone communications introduced an advertisement;

d. Whether Defendant's telephone communications constitute "telephone solicitations" and/or "telemarketing" under the TCPA;

e. Whether Defendant's telephone communications constitute "telephonic sales calls" under the FTSA;

f. Whether Defendant's conduct was knowing and/or willful;

g. Whether Plaintiff and the Class are entitled to statutory damages, liquidated damages, and the amount of such damages; and

h. Whether Defendant should be enjoined from further violations of law alleged herein.

38. **Typicality.** Plaintiff's claims are typical of the Class. Plaintiff and Class members were all subjected to the same telemarketing campaign, using the same equipment, through the same methods, in violation of the same statutes. Plaintiff's claims arise from the same course of conduct and are based on the same legal theories as those of every Class member. There are no defenses unique to Plaintiff.

39. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and is committed to vigorously prosecuting this action. Plaintiff has retained counsel with substantial experience in TCPA class actions and consumer protection litigation, and the resources necessary to advance this case through trial or resolution.

40. **Superiority.** A class action is the superior method for adjudicating this controversy. The statutory damages available to each Class member—$500 to $1,500 per violation—are too modest to justify the cost of individual litigation. Without class treatment, Defendant's unlawful conduct would go largely unchecked, as most consumers lack the resources or incentive to bring individual claims. A class action also conserves judicial resources by resolving thousands of substantially identical claims in a single proceeding and eliminates the risk of inconsistent judgments—where, for example, one court might enjoin Defendant's conduct while another permits it to continue.

41. In addition to satisfying Fed. R. Civ. P. 23(a), Plaintiff satisfies Rule 23(b) because:

a. Defendant engaged in a uniform course of conduct toward the Class, making final injunctive and declaratory relief appropriate with respect to the Class as a whole under Rule 23(b)(2); and

b. Questions of law and fact common to the Class predominate over any individual questions, and a class action is superior to all other

available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). Common questions—including whether Defendant's equipment qualifies as an automated system under the FTSA, whether Defendant obtained prior express written consent, and whether Defendant's violations were willful—can be resolved with common proof, while no individual question threatens to overwhelm the litigation.

## CAUSES OF ACTION

### COUNT 1

### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)

### (On Behalf of Plaintiff and the TCPA Prerecorded Voice Class)

42. Plaintiff incorporates by reference and realleges the preceding paragraphs as though fully set forth herein.

43. The TCPA and its implementing regulations prohibit initiating any call to a cellular telephone number using an artificial or prerecorded voice without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Where the call includes or introduces an advertisement or constitutes telemarketing, the caller must obtain prior express *written* consent. 47 C.F.R. § 64.1200(a)(2).

44. Defendant—or third parties acting on Defendant's behalf—initiated telephone communications to the cellular telephone numbers of Plaintiff and the Class using an artificial or prerecorded voice.

45. Defendant did not have prior express written consent to initiate the telephone communications to Plaintiff or the Class.

46. Defendant's conduct violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. §§ 64.1200(a)(1), (a)(2).

47. As a result of Defendant's violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life.

48. Defendant's violations were willful or knowing. Defendant made a deliberate decision to deliver its telemarketing messages through an artificial or prerecorded voice rather than a live representative, knew or should have known that it had no consent to contact Plaintiff or the Class in this manner, and knew or should have known that its conduct violated federal law.

49. Plaintiff and the Class are entitled to:

a. An injunction prohibiting Defendant from continuing to violate the TCPA. 47 U.S.C. § 227(b)(3)(A);

b. Statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3)(B); and

c. Treble damages of $1,500 per violation for Defendant's willful or knowing violations. 47 U.S.C. § 227(b)(3)(C).

## COUNT 2

### Violation of the FTSA, Fla. Stat. § 501.059(8)(a) — Autodialer

### (On Behalf of Plaintiff and the FTSA Autodialer Class)

50. Plaintiff incorporates by reference and realleges the preceding paragraphs, except for the paragraphs in the preceding Count, as though fully set forth herein.

51. When Defendant initiated the telephone communications to Plaintiff, the FTSA prohibited making or knowingly allowing to be made an unsolicited telephonic sales call using "an automated system for the selection or dialing of telephone numbers" without the prior express written consent of the called party. Fla. Stat. § 501.059(8)(a) (2022).

52. Defendant—or third parties acting on Defendant's behalf—made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection or dialing of telephone numbers.

53. The telephone communications were unsolicited telephonic sales calls—they were not made in response to an express request of the person called, and Plaintiff had no prior or existing business relationship with Defendant. Fla. Stat. § 501.059(1)(j), (k).

54. Defendant did not obtain prior express written consent as defined by the FTSA. Fla. Stat. § 501.059(1)(g), (8)(a).

55. Defendant initiated the telephonic sales calls to Plaintiff while Plaintiff was located in Florida, and to Class members located in Florida.

56. Defendant's conduct violated Fla. Stat. § 501.059(8)(a).

57. As a result of Defendant's violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life.

58. Defendant's violations were willful or knowing. Defendant is in the business of initiating mass telephone calls, made a deliberate choice to use an automated system to initiate those telephone communications, knew or should have known that it had no written consent from Plaintiff or the Class, and knew or should have known that its conduct violated Florida law.

59. Plaintiff and the Class are entitled to:

a. An injunction prohibiting Defendant from continuing to violate the FTSA. Fla. Stat. § 501.059(10)(a)(1);

b. Liquidated damages of $500 per violation. Fla. Stat. § 501.059(10)(a)(2);

c. Treble liquidated damages of $1,500 per violation for Defendant's willful or knowing violations. Fla. Stat. § 501.059(10)(b); and

d. Reasonable attorneys' fees and costs. Fla. Stat. § 501.059(11)(a).

## COUNT 3

## Violation of the FTSA, Fla. Stat. § 501.059(8)(a) — Recorded Message

## (On Behalf of Plaintiff and the FTSA Recorded Message Class)

60. Plaintiff incorporates by reference and realleges the preceding paragraphs, except for the paragraphs in the preceding Counts, as though fully set forth herein.

61. The FTSA prohibits making or knowingly allowing to be made an unsolicited telephonic sales call that involves the playing of a recorded message when a connection is completed to the number called, without the prior express written consent of the called party. Fla. Stat. § 501.059(8)(a).

62. Defendant—or third parties acting on Defendant's behalf—made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class that involved the playing of a recorded message.

63. The telephone communications were unsolicited telephonic sales calls—they were not made in response to an express request of the person called, and Plaintiff had no prior or existing business relationship with Defendant. Fla. Stat. § 501.059(1)(j), (k).

64. Defendant did not obtain prior express written consent as defined by the FTSA. Fla. Stat. § 501.059(1)(g), (8)(a).

65. Defendant initiated the telephonic sales calls to Plaintiff while Plaintiff was located in Florida, and to Class members located in Florida.

66. Defendant's conduct violated Fla. Stat. § 501.059(8)(a).

67. As a result of Defendant's violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life.

68. Defendant's violations were willful or knowing. Defendant made a deliberate decision to deliver its telephone communications through a recorded message rather than a live representative, knew or should have known that it had no written consent from Plaintiff or the Class, and knew or should have known that its conduct violated Florida law.

69. Plaintiff and the Class are entitled to:

a. An injunction prohibiting Defendant from continuing to violate the FTSA. Fla. Stat. § 501.059(10)(a)(1);

b. Liquidated damages of $500 per violation. Fla. Stat. § 501.059(10)(a)(2);

c. Treble liquidated damages of $1,500 per violation for Defendant's willful or knowing violations. Fla. Stat. § 501.059(10)(b); and

d. Reasonable attorneys' fees and costs. Fla. Stat. § 501.059(11)(a).

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant immediately implement a litigation hold and take affirmative steps to preserve all documents, records, and electronically stored

information ("ESI") relevant to the claims and defenses in this action, including but not limited to:

a. All call logs, text message transmission records, and voicemail records reflecting telephone communications initiated to Plaintiff, the putative Class members, or any consumer during the relevant time period, including the originating number, recipient number, date, time, duration, and content of each communication;

b. All records identifying the equipment, software, platform, or system used to initiate the telephone communications at issue, including vendor contracts, platform dashboards, configuration settings, and technical documentation;

c. All records of prior express consent or prior express written consent on which Defendant relies, including the date, time, method, and content of any purported consent and the identity of any lead generator or third party from whom such consent was obtained;

d. All internal do-not-call lists, opt-out logs, suppression lists, and records of consumer requests to stop receiving telephone communications, together with any written policies, training materials, or procedures related to Defendant's do-not-call compliance;

e. All records reflecting scrubs or queries against the National Do Not Call Registry or any other suppression database;

f. All marketing materials, scripts, templates, and campaign records associated with the telephone communications at issue;

g. All records in the possession, custody, or control of any vendor, lead generator, marketing partner, or other third party that Defendant contracted, hired, or directed to assist in initiating the telephone communications at issue; and

h. All communications, whether internal or with third parties, concerning the telephone communications at issue, consumer complaints, or compliance with the TCPA, FTSA, or any other applicable telemarketing law.

Defendant is on notice that spoliation of any such evidence may result in an adverse inference instruction, sanctions, or other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter judgment against Defendant and award the following relief:

A. An order certifying the Class as defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel pursuant to Fed. R. Civ. P. 23;

B. A permanent injunction prohibiting Defendant from further violations of the TCPA, the FTSA, and their implementing regulations;

C. Statutory damages of $500 per violation of 47 U.S.C. § 227(b)(1)(A)(iii), trebled to $1,500 per violation for Defendant's willful or knowing conduct, pursuant to 47 U.S.C. § 227(b)(3);

D. Liquidated damages of $500 per violation of the FTSA, trebled to $1,500 per violation for Defendant's willful or knowing conduct, pursuant to Fla. Stat. § 501.059(10);

E. Reasonable attorneys' fees pursuant to Fla. Stat. § 501.059(11)(a);

F. Costs of this action;

G. Pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as this Court deems just and proper.

Dated: October 20, 2026

Respectfully submitted,

*<u>/s/ Christopher Gold</u>*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, P.A.**
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139
Telephone: (305) 900-4653
Email: chris@chrisgoldlaw.com

*Lead Counsel for Plaintiff*
*and the Proposed Class*